Walter **KACZMAREK** and Theresa Kaczmarek, Plaintiffs–Appellants,

v.

**ALLIED CHEMICAL CORPORATION,** United States Steel Corporation, and Ever–Tite Coupling Company, Inc., Defendants–Appellees.

No. 86–2840.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 29, 1987.

Decided Dec. 29, 1987.

Rehearings Denied Feb. 3 and March 10, 1988.

Alfred Y. Kirkland, Jr., Brady, McQueen, Martin, Collins & Jensen, Elgin, Ill., for plaintiffs-appellants.

James E. McHie, Hammond, Ind., Timothy M. Swan, Merrillville, Ind., Thomas H. Fegan, Chicago, Ill., for defendants-appellees.

Before BAUER, Chief Judge, and CUDAHY and POSNER, Circuit Judges.

POSNER, Circuit Judge.

The plaintiffs in this diversity suit, Walter Kaczmarek and his wife, appeal from a judgment entered on a jury verdict for the three defendants, Allied Chemical Corporation, United States Steel Corporation, and Ever–Tite Coupling Company.

In 1979 Kaczmarek was employed by Willett Transports, an Indiana company, as a driver of tanker trucks that transport acid or other hazardous chemicals. He had been driving such trucks for nine years and had been working for Willett for a year and a half. On the day of the accident, he first drove to Indiana from his home in Illinois to pick up the tractor part of the truck, and then drove the tractor back to an Allied Chemical plant in Illinois. Allied had a contract to supply sulphuric acid to a U.S. Steel plant in Indiana. At the Allied plant, Kaczmarek hitched his tractor to one of Allied's tank trailers and filled the tank with sulphuric acid. Then he drove to the U.S. Steel plant in Indiana, where the accident occurred while he was unloading the acid: the hose connecting the tank trailer to U.S. Steel's receiving tank broke loose from the intake valve in which it was inserted and squirted acid on his leg and groin. The parties disagree over whether the accident occurred because a coupling at the end of the hose, allegedly manufactured by Ever–Tite, was defective or because Kaczmarek disengaged the hose from the intake valve without realizing that the hose still contained acid under pressure. What is clear, however, is that Kaczmarek was not wearing his "acid suit" (a rubber or plastic acid-resistant suit supplied him by Willett)—he had left the pants and boots in his car and the jacket in the

cab of the truck—and that if he had been wearing it he would not have been injured.

Every facility where hazardous chemicals are handled has a shower in case a worker is sprayed, and as soon as the accident occurred Kaczmarek ran for the shower on U.S. Steel's premises. But the ground in the area of the truck was heavily littered—the photographs placed in evidence made it look, in his counsel's words, like a "lunar landscape"—and Kaczmarek fell while running for the shower, which, moreover, he had difficulty finding because (he says) its location was poorly marked. By the time he reached the shower he was, in the words of one witness, "melting like a candle," having sustained serious acid burns which injured his sexual organs.

Joined by his wife, who claims a loss of consortium, Kaczmarek initially filed a negligence action against Allied and U.S. Steel in the federal district court in Chicago. The suit was transferred to the federal district court in Hammond, Indiana, for the convenience of the parties. See 28 U.S.C. § 1404(a). Kaczmarek then filed a separate suit in that court against Ever–Tite for negligence and strict products liability. The cases were consolidated. The magistrate, who presided at trial by consent of the parties under 28 U.S.C. § 636(c), ruled that the tort law of Indiana was applicable to Kaczmarek's claims against all three defendants. Under the law of Indiana when the accident occurred, contributory negligence was a complete defense to negligence. The jury was so instructed and returned a verdict for all three defendants.

■ Kaczmarek's first argument is that the district court should have applied Illinois tort law, under which the victim's negligence reduces the damages to which he is entitled ("comparative negligence") but is not a complete defense, rather than the law of Indiana. We agree with him as far as Allied is concerned. Since the suit against Allied was filed in a federal court in Illinois, and is a diversity suit, the conflict of laws rules of Illinois apply, see *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97, 61 S.Ct. 1020, 1021–22, 85 L.Ed. 1477 (1941), regardless of the subsequent transfer, see *Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S.Ct. 805, 820, 11 L.Ed.2d 945 (1964). The question is therefore whether the courts of Illinois would apply Illinois tort law or Indiana tort law in a case such as this.

The conflict of laws rule in tort cases used to be simple. It was *lex loci delicti*—the law of the place where the tort occurred was the law applicable to the case; here that would be Indiana. This approach was criticized, and eventually in most states abandoned, because it sometimes resulted in the application of the law of a state that had little connection with the events giving rise to the suit. Kaczmarek's suit against Allied illustrates the type of case that troubled the opponents of *lex loci delicti*. Filed in Illinois by an Illinois resident against a firm that is not an Indiana firm and has a plant in Illinois, the suit complains about conduct—Allied's provision of an allegedly defective coupling—that occurred in Illinois. And whatever interest Indiana might have in enforcing its rule of contributory negligence in such a case is diminished by the fact that Indiana has abrogated the rule and replaced it by comparative negligence, see Ind.Code §§ 34–4–33–3, 34–4–33–4 (1983), albeit not for claims accruing, as did Kaczmarek's, before January 1, 1985, see Ind.Pub.L. 317–1983, § 9.

The opponents of mechanical rules of conflict of laws may have given too little weight to the virtues of simplicity. The new, flexible standards, such as "interest analysis," have caused pervasive uncertainty, higher cost of litigation, more forum shopping (a court has a natural inclination to apply the law it is most familiar with—the forum's law—and will find it easier to go with this inclination if the conflict of laws rules are uncertain), and an uncritical drift in favor of plaintiffs. See, e.g., Brilmayer, *Governmental Interest Analysis: A House Without Foundations*, 46 Ohio St.L.J. 459 (1985), and *Interest Analysis and the Myth of Legislative Intent*, 78 Mich.L.Rev. 392 (1980). Nevertheless the Illinois Appellate Court has embraced a form of "interest analysis": it tries to fig-

ure out which state has the strongest interest in the application of its law to the particular case; that state's law governs. See, e.g., *Estate of Barnes*, 133 Ill.App.3d 361, 88 Ill.Dec. 438, 478 N.E.2d 1046 (1985); *Mitchell v. United Asbestos Corp.*, 100 Ill. App.3d 485, 491–99, 55 Ill.Dec. 375, 379–85, 426 N.E.2d 350, 354–60 (1981). The place of the accident retains presumptive weight in a tort case, but the presumption is easily overcome. See *Fleet Management Systems, Inc. v. Archer–Daniels–Midland Co.*, 627 F.Supp. 550, 562–64 (C.D.Ill.1986). Although the Supreme Court of Illinois has not dealt with conflicts questions for many years, we have no reason to believe that it would reject the approach of the intermediate court, and our personal discomfort with the vagaries of interest analysis is no ground for our refusing in this diversity case to follow the established approach of that court. See *Palmer v. Beverly Enterprises*, 823 F.2d 1105, 1113–14 (7th Cir. 1987) (concurring opinion).

In the case of Kaczmarek's claim against Allied, the approach tilts decisively in favor of the tort law of Illinois. The only connection between that claim and Indiana is that the accident occurred there. Although this connection is, as we have noted, entitled to weight, it happens in this case to be fortuitous. The accident—if it really was due to Allied's failure to replace the allegedly defective coupling—could just as well have occurred in Illinois, when Kaczmarek was making a delivery there or when he was loading the truck with Allied's acid. The common sense of *lex loci delicti* is that the tort law of the state where the accident occurs is likely to be the law most closely attuned to conditions in the state affecting safety, such as climate, terrain, and attitudes toward safety. This insight is not irrelevant to the present case, because the condition of the ground, and the directions to the shower, in the U.S. Steel plant may have been factors in the accident. But the relationship between these factors and the liability of Allied Chemical is tenuous. The factors in question were in the control of U.S. Steel, and Kaczmarek's claim against U.S. Steel *is* governed by Indiana law, as we shall see.

What is not true, however, is that just because the victim and the injurer were out-of-staters Indiana could not be affected by the accident and therefore has no interest at all in the application of its law (law presumably designed, in part anyway, to minimize such accidents). The accident resulted in a workers' compensation award against Willett and thus imposed a cost on an Indiana firm, though Willett may be able to recoup the award by an action for indemnity against one or more of the defendants in Kaczmarek's tort case—should any of those defendants ever be held liable to him. If contributory negligence were a stronger deterrent to negligence by potential accident victims than comparative negligence, an argument could be made that Indiana has an interest in applying its rule of contributory negligence to accidents that involve employees of Indiana employers even if the employer is not a defendant in the tort suit arising from the accident and the employee is not a resident of Indiana. But such an argument would founder on two shoals. First, comparative negligence, though it may be more costly to administer than contributory negligence, appears to have either as positive an effect on the incentives of potential victims to take care as contributory negligence (see Landes & Posner, The Economic Structure of Tort Law 73–82 (1987)) or a more positive effect (see Haddock & Curran, *An Economic Theory of Comparative Negligence*, 14 J. Legal Stud. 49 (1985); Cooter & Ulen, *An Economic Case for Comparative Negligence*, 61 N.Y.U.L.Rev. 1067 (1986); Rea, *The Economics of Comparative Negligence*, forthcoming in Int'l Rev. Law & Econ.). Second, Indiana thinks so little of contributory negligence that it has abandoned the rule in favor of comparative negligence; why therefore would it want to enforce the rule where the relation between the accident and Indiana is as attenuated as it is in Kaczmarek versus Allied? Granted, this way of looking at the Indiana statute treats as the purposive act of a dedicated public-welfare maximizer what may actually be the result of an unprincipled political compromise, but it is the ap-

proach that Illinois cases take in such cases, see *Mitchell v. United Asbestos Corp., supra,* and we are bound to follow it in a diversity suit.

■ We reach a different conclusion with respect to Kaczmarek's claim against U.S. Steel. The only relevant location of this defendant was in Indiana; the defendant's alleged misconduct (the littered ground, and the allegedly inadequate directions to the shower) took place entirely within Indiana; the accident occurred there. The only connection to Illinois is that the claimant is an Illinois resident. We held that that is not enough in *Edwardsville National Bank & Trust Co. v. Marion Laboratories, Inc.,* 808 F.2d 648, 652 (7th Cir.1987) (interpreting Illinois conflicts law).

■ The district court also properly applied Indiana tort law to Kaczmarek's suit against Ever–Tite. The suit was filed in Indiana, so Indiana's rules on conflict of laws govern. A more traditional state than Illinois, Indiana adheres to the rule of *lex loci delicti.* See, e.g., *Hubbard Mfg. Co. v. Greeson,* 487 N.E.2d 825 (Ind.App.1986). So the only question is where the tort occurred. Although the defect in the coupling (if it was defective) was introduced in the state where the coupling was manufactured, which is not Indiana, the tort of products liability is not complete till the injury occurs, see *Wojcik v. Almase,* 451 N.E.2d 336, 341–42 (Ind.App.1983); cf. *Eby v. York–Division,* 455 N.E.2d 623, 626 (Ind. App.1983), and the injury occurred in Indiana. Therefore Indiana's tort law, which at the time of the accident allowed a defense of contributory negligence to claims based on negligence, was properly applied to the negligence claim against Ever–Tite.

Kaczmarek points out that he would have sued Ever–Tite in Illinois had his case against Allied and U.S. Steel not already been transferred to Indiana upon those defendants' motion. Indeed, he would have added Ever–Tite as a defendant in the transferred suit by motion (see Fed.R.Civ. P. 15(c)) had he not feared that the statute of limitations would expire before the mo-

tion was decided. He asks us therefore to treat the suit as if it had been filed in Illinois in the first place, and apply Illinois conflict rules. This is a good argument, but we consider it outweighed by the desirability of continuing to steer by one of the few fixed stars in the conflicts firmament —the rule that in a diversity case the federal district court must apply the conflict of laws rules of the state in which the suit was filed. Notice that if Kaczmarek had wanted Indiana's conflicts rules to apply to his action against Ever–Tite he would have proceeded exactly as he did. It would cause unnecessary confusion if plaintiffs in his position were allowed, after filing suit in one state, to claim that their suit should be treated for purposes of conflict of laws as if it had been filed in another state.

While this conclusion might lead to harsh results in some cases, it does not do so here. Against Ever–Tite, Kaczmarek was arguing not only negligence but also strict liability, to which, as the jury was told, contributory negligence is not a defense. *Ragsdale v. K–Mart Corp.,* 468 N.E.2d 524, 526 (Ind.App.1984). The jury verdict for Ever–Tite on both theories of liability must therefore be interpreted as a finding not that Kaczmarek was barred by his contributory negligence but that the coupling was not defective, or was not a cause of the accident, or was not manufactured by Ever–Tite. So it would have made no difference (unless the jury was lawless) if the rule applicable to his conduct had been comparative negligence rather than contributory negligence.

But there must be a new trial against Allied. Although the evidence of negligence is not strong, Allied does not argue that it was entitled to judgment as a matter of law even if Kaczmarek's own negligence was not a complete bar to his suit, as it would not have been under Illinois law, which we have held is applicable to Kaczmarek's claim against Allied. For the guidance of the district court on remand, we will discuss Kaczmarek's objections to the court's evidentiary rulings; this is also necessary to determine whether those ob-

jections warrant a new trial against U.S. Steel or Ever–Tite.

■ The district court refused to admit evidence that after the accident Allied replaced the coupling on its hoses with a different and perhaps safer one. Rule 407 of the Federal Rules of Evidence forbids (with various exceptions) the introduction of evidence of repairs or other safety measures taken after an accident. The major purpose is to avoid discouraging injurers from taking such remedial measures as the accident may suggest would be appropriate to reduce the likelihood of future accidents —and discouraged they would be if they were penalized in court by having the measures treated as a confession of fault in not having been taken earlier. See *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 469, 472 (7th Cir.1984). This rationale is weakened in the present case by the fact that the decision to replace the couplings was taken before the accident and merely implemented afterward; the fat was in the fire. Against this it can be argued that one can always change one's mind and that it would be contrary to the purpose of Rule 407 to give an injurer an incentive to rescind his decision to adopt the remedial measure in order to prevent evidence of the measure from being used against him. This seems an unrealistic hypothesis, however. Once the decision to adopt the safety measure has been taken, presumably on sufficient grounds, the fact that an accident occurred can only strengthen them. And since the decision itself will be admissible, the incremental evidentiary impact of the fact that the decision was carried out is unlikely to be great. Indeed, if after an accident the injurer rescinded a decision for safety made before the accident occurred, his conduct would strike the average jury as perverse. So the injurer is unlikely to rescind merely to keep from the jury evidence that the remedial measure was implemented.

Although a fair argument can thus be made that Rule 407 should not apply to a case such as this where the remedial measure is adopted pursuant to a decision taken before the accident, we are unwilling to carve out an exception for this case. The rule is explicit in stating that "evidence of subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event," although the evidence may be admitted if "offered for another purpose." There is nothing wrong with a court's interpolating an exception into a statute or rule when necessary to serve the draftsmen's purposes; it is done all the time. But the considerations pro and con the exception sought in this case are too closely balanced for us to want to complicate the administration of Rule 407 by creating such an exception to its refreshingly lapidary prose. We conclude that the district judge did not err by refusing to allow the jury to learn that the decision to replace the coupling had been implemented after the accident.

■ Kaczmarek complains about the admission of testimony by two employees of Willett—Cusick and Daubs. Cusick, the company's safety director, testified that in 1979, when the accident occurred, the company's safety rules required drivers to wear acid suits. Kaczmarek argues that since Cusick did not become safety director until 1984, he could not have been testifying from personal knowledge, as required by Rule 602 of the Federal Rules of Evidence. Cusick testified that as safety director it was his duty to familiarize himself not only with the company's current safety practices but with the history of those practices, and that he had done so. This *sounds* reasonable enough. A safety practice is not a tangible object of which personal knowledge can be acquired by direct observation. Knowledge of the practice will be an inference from observations of behavior and discussions with other people, and is likely to be possessed by the company's safety director even though in a large company he may have obtained his knowledge largely from what his subordinates told him. But so far as we can tell from the record, the only basis on which Cusick testified to safety practices five years before he became safety director was the say-so of other people. He was relying purely on hearsay. Hearsay often is admissible. See Fed.R.Evid. 803, 804. But a witness cannot offer the contents of a hear-

say statement as *his* personal knowledge, as was attempted here. An expert witness can offer an opinion that may be based on inadmissible hearsay, see Fed.R.Evid. 703, but Cusick was attesting to a historical fact and anyway no effort to qualify him as an expert was made.

■ As it is uncontested that Willett had issued Kaczmarek an acid suit, that he failed to wear it on the day of the accident, and that he was an experienced driver of acid trucks and knew what sulphuric acid could do to him, his failure to wear the suit may well have been negligent whether or not he had been told he should wear it; it was not, after all, a Halloween costume. But we are not prepared to hold that failing to use every item of issued safety equipment is contributory negligence per se. An employer may err on the side of safety and issue equipment that provides more protection than the legal minimum, and if so the employee is not necessarily negligent in failing to use it. He may be, if the burden of the added equipment is less than the benefit in incremental safety produced. But it will not always and for every employee be less. It takes time to put on safety equipment, and invariably the equipment curtails mobility.

■ Daubs, the head in 1979 of the division of Willett in which Kaczmarek worked, testified that the company had held a series of meetings at which it instructed its drivers in safety matters, including the importance of wearing the acid suit, and that Kaczmarek must have attended the meetings because all drivers were required to attend. Kaczmarek complains that the conclusion that he must have attended the meetings went beyond Daubs' personal knowledge and was therefore inadmissible under Rule 602. We disagree. In testifying that the meetings were held and that all drivers were required to attend them, Daubs was testifying to matters within his personal knowledge. And if Kaczmarek was required to attend the meetings it is a fair though not compelling inference that he did attend them. Nor would his contributory negligence be less if he had played hooky from the meetings at which drivers were instructed in how to protect themselves from precisely the type of accident that befell Kaczmarek.

■ The magistrate refused, however, to allow McLaughlin, a fellow driver of Kaczmarek's at the time of the accident, to testify in rebuttal to Cusick and particularly Daubs that, at the safety meetings where Kaczmarek worked, the drivers had been told that wearing safety gloves and a safety hat was enough protection. The magistrate ruled that Kaczmarek should have called McLaughlin in his case in chief. The ruling is superficially perplexing, because McLaughlin's testimony would have related to contributory negligence, a defense. But the issue of contributory negligence had been injected into the case in the defendants' opening statement, and as is common in such cases the plaintiffs wisely decided to put in their evidence against contributory negligence as part of their case in chief rather than let the jury brood over the issue throughout the presentation of the plaintiffs' evidence. So Kaczmarek testified in the case in chief that he had not been instructed to wear the pants and jacket of his acid suit. But McLaughlin was not called to back him up.

Although it would have been better for Kaczmarek to put in all his evidence on contributory negligence at once, the magistrate was not justified in refusing to allow McLaughlin to be called as a rebuttal witness. When Kaczmarek testified about the lack of safety instructions from Willett, his lawyer could not be sure that the defendants would contest that particular testimony by introducing testimony of Cusick, Daubs, or other employees of Willett, and he was not obliged to anticipate their doing so by calling McLaughlin. See *Benedict v. United States*, 822 F.2d 1426, 1429–30 (6th Cir.1987). Moreover, the defendants would not have been placed at a disadvantage by McLaughlin's being called as a rebuttal witness; if necessary, they could have sought permission to recall Cusick or Daubs, or present other testimony in contradiction to McLaughlin's testimony. Finally, McLaughlin's testimony was vital to Kaczmarek's defense. Compare *Rodri-*

*guez v. Olin Corp.*, 780 F.2d 491, 496 (5th Cir.1986); *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 459 (2d Cir.1975). If Kaczmarek had been told (as McLaughlin would have testified) that he did not have to wear the pants and jacket of his acid suit, this would go far to establish that he had not been contributorily negligent. Although the district judge (in this case, the magistrate) enjoys broad latitude in deciding what is proper rebuttal evidence, *Spesco, Inc. v. General Electric Co.*, 719 F.2d 233, 239–40 (7th Cir.1983), he exceeded the bounds here. Compare *Martin v. Weaver*, 666 F.2d 1013, 1019–22 (6th Cir.1981).

■ So there were two trial errors: the admission of Cusick's testimony and the exclusion of McLaughlin's. Could they have been harmless? U.S. Steel's negligence, if negligence there was, consisted of failing to provide back-up safety precautions in the event that a worker was injured because of a failure to wear his acid suit or for any other reason. Kaczmarek's contributory negligence or lack thereof was therefore irrelevant to the question whether U.S. Steel was negligent in failing to take precautions that would have lessened the consequences of the accident. If a doctor treats an injury negligently, it is no defense to a malpractice suit that the injury he treated and made worse was due to the negligence of the injured person. *Owens v. Stokoe*, 115 Ill.2d 177, 104 Ill.Dec. 694, 503 N.E.2d 251 (1986). As with Kaczmarek's strict liability claim against Ever–Tite, not only the issue of contributory versus comparative negligence but any evidentiary rulings incidental to the issue (or to any other issue of victim's care or conduct) are irrelevant to U.S. Steel's liability, which can only have been based—if the jury was thinking straight—on a finding that U.S. Steel was not negligent.

The qualification in the last sentence is critical. Although the jury was correctly instructed that Kaczmarek's failure to wear protective clothing was not contributory negligence if it "did no more than furnish a condition by which the injury was made possible," it was also instructed that contributory negligence was a possible defense to all of the charges against all of the defendants, except the strict liability charge against Ever–Tite. The issue of contributory negligence with regard to the claim against U.S. Steel should have been withdrawn from the jury (as Kaczmarek tried to do by means of a proposed instruction, which the judge refused to give, on intervening cause), but it was not withdrawn and the jury may therefore have thought that if Kaczmarek was negligent at any time this would bar his claim even if U.S. Steel was also negligent. So there must be a new trial of Kaczmarek's claim against U.S. Steel as well as his claim against Allied Chemical.

■ Although Kaczmarek charged Ever–Tite with negligence as well as strict liability, and his contributory negligence would be a defense to the negligence claim though not to the strict liability claim, the magistrate's error in refusing to allow McLaughlin to testify was harmless. If, as we have said the jury must have found, the coupling was not defectively manufactured, or if defective was not manufactured by Ever–Tite, then we do not see, nor does Kaczmarek suggest, how Ever–Tite might nonetheless have been negligent. And if it was not negligent there can be no liability on a theory of negligence even if Kaczmarek was free from contributory negligence. We do not think the jury could have mistakenly believed, in the teeth of instructions which clearly stated that contributory negligence was not a defense to Kaczmarek's strict liability claim against Ever–Tite, that contributory negligence was a defense to that claim.

To summarize, the judgment in favor of Allied Chemical and U.S. Steel is reversed with directions to grant a new trial. The judgment in favor of Ever–Tite is affirmed. Allied and U.S. Steel shall pay the Kaczmareks' costs on appeal, and the Kaczmareks shall pay Ever–Tite's costs on appeal.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.