**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HERMAN HUMPHRIES; TERESA G.
HUMPHRIES,
Plaintiffs-Appellees,

and

AMERICAN TRANSPORTATION SERVICES,
INCORPORATED,
Intervenor-Plaintiff,

No. 98-1970

v.

MACK TRUCKS, INCORPORATED,
Defendant-Appellant.

BOBBY COWAN; DEWAYNE PITTS;
MATLACK INCORPORATED,
Movants.

Appeal from the United States District Court
for the District of South Carolina, at Spartanburg.
G. Ross Anderson, Jr., District Judge.
(CA-97-1945-7-13)

Argued: September 23, 1999

Decided: October 13, 1999

Before MURNAGHAN and MOTZ, Circuit Judges, and
GOODWIN, United States District Judge for the
Southern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** William Alexander Coates, David L. Moore, Jr., LOVE, THORNTON, ARNOLD & THOMASON, P.A., Greenville, South Carolina, for Appellant. Francis Patrick Hubbard, UNIVERSITY OF SOUTH CAROLINA SCHOOL OF LAW, Columbia, South Carolina, for Appellees. **ON BRIEF:** Joseph G. Wright, III, WRIGHT LAW OFFICES, Anderson, South Carolina; Chad A. McGowan, Anderson, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

In this product liability diversity case, after the jury awarded the plaintiffs substantial damages, the district court denied the defendant's motions for judgment as a matter of law and a new trial. We affirm.

I.

Herman Humphries was employed by American Transport Systems, a subsidiary employee leasing company for Matlack, Inc. As a driver for Matlack, Humphries drove a Mack Series CH long haul truck that was manufactured by Mack Trucks, Inc. On February 22, 1995, while Humphries was connecting the air and electrical lines from the cab of the truck to the attached trailer, he fell from the deck plate and sustained serious physical injuries.

Humphries and his wife, Teresa, initiated this action against Mack Trucks asserting strict liability and negligence claims and loss of consortium. The Humphries alleged that the "L" shaped design of the deck plate was defective and unreasonably dangerous because the risk

2

of injury posed by the open corner in the driver's side rear portion of the deck plate--the point from which Herman Humphries fell-- substantially outweighed the utility of the configuration and the minimal costs associated with manufacturing a symmetrical deck plate. The Humphries also claimed that Mack Trucks negligently breached its duty to exercise reasonable care to adopt a safe design for the deck plate.

On a special verdict form, the jury expressly found Mack Trucks liable under both strict liability and negligence theories. The jury awarded Herman Humphries $1,873,539 in compensatory damages and awarded Teresa Humphries $191,520 for loss of consortium. Mack Trucks moved for judgment as a matter of law and a new trial, which the district court denied.

Mack Trucks appeals. We review de novo the district court's order denying judgment as a matter of law to determine whether the evidence presented at trial, viewed in the light most favorable to the Humphries, would have allowed a reasonable jury to render a verdict in their favor. See In re Wildewood Litig., 52 F.3d 499, 502 (4th Cir. 1995). We review the district court's denial of the motion for a new trial for abuse of discretion. Id.; United States v. Wilson, 118 F.3d 228, 237 (4th Cir. 1997).

II.

In denying Mack Trucks' motion for judgment as a matter of law, the district court found sufficient evidence to support the jury's verdict on both the strict liability and negligence claims. Applying South Carolina law, we conclude that there was sufficient evidence to support the jury's finding of negligence. Therefore, we need not reach the question as to the appropriate test under South Carolina law to be applied to strict liability claims involving open and obvious dangers.

Unlike strict liability theory, which focuses on the product itself, negligence theory of products liability focuses on the conduct of the manufacturer, and a plaintiff must prove that the defendant failed to exercise due care in some respect. See, e.g., Bragg v. Hi-Ranger, Inc., 319 S.C. 531, 462 S.E.2d 321, 326 (Ct. App. 1995). A plaintiff can meet this burden by showing that the manufacturer was aware of the

3

danger and failed to take reasonable steps to correct it. See Madden v. Cox, 284 S.C. 574, 328 S.E.2d 108, 112 (Ct. App. 1985) (citing Marchant v. Lorain Div. of Koehring, 272 S.C. 243, 251 S.E.2d 189 (1979)). The Humphries alleged that Mack Trucks breached a duty of due care as to the original design of the deck plate as well as to the timely manufacture and delivery of a retrofit for the deck plate once it received notice of the product's dangerousness.

In addressing the alleged negligence as to the original deck plate design, the district court correctly held Mack Trucks to the standard of an expert in the field of heavy truck manufacturing. See, e.g., Carolina Home Builders, Inc. v. Armstrong Furnace Co., 259 S.C. 346, 191 S.E.2d 774, 779 (1972). Thus, Mack Trucks was under a duty to exercise reasonable care to adopt a safe design for the deck plate by balancing the seriousness and likelihood of harm against the burden of feasible precautions to avoid or minimize harm. See Restatement (Second) § 398 (1965); Mickle v. Blackmon, 252 S.C. 202, 166 S.E.2d 173, 192 (1969). The heart of the Humphries' negligence claim is that a reasonable manufacturer, in seeking ways to minimize the risks associated with the deck plate, would have utilized human factors analysis in testing the "L" shaped design of the deck plate, and that such analysis would have revealed the likelihood of injury associated with the asymmetrical design. The Humphries offered the testimony of several expert witnesses to support this theory.

On appeal, Mack Trucks challenges the admissibility of the testimony from two of those witnesses--Dr. Thomas R. Alley and Dr. S. David Leonard. "[A]buse of discretion is the proper standard of review of a district court's evidentiary rulings," including rulings on the admissibility of expert testimony. General Elec. Co. v. Joiner, 522 U.S. 136, 118 S. Ct. 512, 517 (1997). "[T]he admissibility of expert testimony in a federal court sitting in the diversity jurisdiction is controlled by federal law." Scott v. Sears, Roebuck & Co., 789 F.2d 1052, 1054 (4th Cir. 1986).

A.

At trial, Dr. Alley testified about the "best understood functioning of human perception and memory." Mack Trucks argues that Dr.

Alley's opinion that the asymmetrical design of the deck plate was more dangerous than a symmetrical design lacked sufficient scientific support; the company points out that Dr. Alley did not conduct any tests or studies of the deck plate in formulating his opinion. Mack Trucks also contends that Dr. Alley's conclusion that Herman Humphries was "psychologically overloaded" contradicts Humphries' own testimony, and therefore, the district court should have found Dr. Alley's opinions to be unreliable and inadmissible. [1] In reconsidering whether Dr. Alley's testimony was properly admitted into evidence, the district court explained that it was the jury's responsibility to consider the fact that Dr. Alley was not an engineer and that he conducted no studies, tests, or inspections of the deck plate in determining how much weight to give his testimony.

Fed. R. Evid. 702 provides that expert testimony may be admitted if it will "assist the trier of fact to understand the evidence or to determine a fact in issue." It is in the sound discretion of the district court whether the offered testimony provides such assistance. See, e.g., Scott, 789 F.2d at 1055 (upholding the admission of some "human factors" testimony).

_____

[1] Despite the Humphries' assertion to the contrary, the record indicates that Mack Trucks adequately preserved its objection to the admissibility of Dr. Alley's testimony. Under Fed. R. Evid. 103(a)(1), a party must state the specific grounds for its objection only when that ground would not be clear from the context. In the case at hand, the ground for the objection was clear in view of the following context: (1) Mack Trucks' motion in limine, the Humphries' response to the motion, and the pre-trial hearing; (2) the likely topic of the side bar conference immediately preceding Mack Trucks' objection at trial; and (3) the district court's order denying the post-trial motion for a new trial based on this issue. See Werner v. Upjohn Co., 628 F.2d 848, 853 (4th Cir. 1980) (finding that the ground for the objection was clear, particularly because the defendant had filed a pre-trial motion with supporting memoranda requesting the suppression of the evidence at issue), cert. denied, 449 U.S. 1080 (1981); United States v. Cummiskey, 728 F.2d 200, 205 (3d Cir. 1984) (finding the context of the objection sufficient to compensate for the lack of specificity where the district court's rulings on post-trial motions demonstrated that the court was aware of the grounds for the objection), cert. denied, 471 U.S. 1005 (1985).

5

Recently, in Kumho Tire Co. v. Carmichael, 119 S. Ct. 1167, 1174-75 (1999), the Supreme Court held that a trial court's gatekeeping obligation under Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579 (1993), applies not only to scientific testimony but to all expert testimony because Rule 702 does not distinguish between"scientific" knowledge, and "technical" or "other specialized" knowledge. At issue in Kumho Tire was the testimony of an engineering expert. The court held that a trial court may consider one or more of the Daubert factors--testing, peer review, error rates, and"acceptability" within the relevant professional community--in assessing the admissibility of non-scientific expert testimony. Kumho Tire , 119 S. Ct. at 1175-76. In other words, the Daubert factors do not constitute a definitive checklist; the factors may be reasonable measures of reliability depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. Id.

Assuming, without deciding, that the Daubert factors should be strictly applied to Dr. Alley's human factors testimony, we conclude that the district court did not abuse its discretion in admitting the testimony. Dr. Alley testified as to the relative risks associated with two deck plate designs--a symmetrical one and an asymmetrical one. Dr. Alley did not testify that the asymmetrical design at issue here was unreasonably dangerous, but rather opined that a person was more likely to fall when confronted with an asymmetrical design based on theories concerning short-term memory and perception, visual spatial tasks, and "interference effects."**2**

Dr. Alley's testimony did not derive merely from speculation or subjective opinion. Rather, he applied his experience and training in the field of cognitive psychology and relied, in part, on "generally accepted psychological principles of human perception and memory" embodied in various published authorities. See J.A. 72-73, 310-13, 319-20. We note that an expert opinion supported by"relevant litera-

_____

**2** Dr. Alley specifically testified on cross-examination that "I don't specifically claim to know exactly what went wrong that caused the fall. However, my claim is, again, that making those connections, whether he did it on all those other occasions, on this particular occasion, would fairly fully occupy his attention and memory so that he may misjudge where his feet are relative to the edges of the platform."

6

ture in the field" is more likely to be admissible under Rule 702 than one that is not. See Oglesby v. General Motors Corp., Nos. 98-1716, 98-1818, 1999 WL 674752 (4th Cir. Aug. 31, 1999) (quoting Alevromagiros v. Hechinger Co., 993 F.2d 417, 422 (4th Cir. 1993)); see also Maryland Cas. Co. v. Therm-O-Disc, Inc., 137 F.3d 780, 785 (4th Cir. 1998) (noting that the expert witness had cited numerous works of technical literature which supported his analytical method to support a finding that the admission of the testimony was not an abuse of discretion); Freeman v. Case Corp., 118 F.3d 1011, 1016-17 (4th Cir. 1997) (distinguishing Alevromagiros, 993 F.2d at 421, and citing with approval the expert's review of industry literature and other published sources to support the holding that the expert's testimony was sufficient to sustain the jury verdict).

Mack Trucks emphasizes that Dr. Alley is not an engineer, that he failed to conduct specific tests or studies involving the deck plate, and that he failed to consider various aspects of the trucking industry. This emphasis is misplaced. Unlike other human factors testimony that some courts have deemed problematic, see, e.g. , Jaurequi v. John Deere Co., 971 F. Supp. 416 (E.D. Mo. 1997), aff'd, 173 F.3d 1076 (8th Cir. 1999), Dr. Alley's testimony did not require him to develop an alternative design or safety device that would require testing or related studies. Dr. Alley's opinion was appropriately limited to his field of expertise and was offered not only to assist the jury in making its determination as to whether Mack Trucks was negligent in designing the asymmetrical deck plate, but also to oppose Mack Trucks' contributory negligence defense. The district court did not abuse its discretion in admitting this testimony.

B.

Mack Trucks also challenges the expert testimony of Dr. Leonard.

Unlike its objection to Dr. Alley's testimony, Mack Trucks did not preserve for appellate review its objection to Dr. Leonard's testimony. Fed. R. Evid. 103(a)(1) requires an objection or a motion to strike to be timely. Mack Trucks did not object and move to strike Dr. Leonard's testimony until the conclusion of the Humphries' case. Although Mack Trucks explains that it did not object earlier because the necessary foundation evidence might have been introduced and admitted

7

during the remainder of the Humphries' case, this explanation goes to the heart of what Rule 103(a)(1) was designed to avoid. See United States v. Parodi, 703 F.2d 768, 783 (4th Cir. 1983) ("[t]imeliness of objection under the Rule requires that it `be made at the time the evidence is offered . . . .'") (quoting DiPaola v. Riddle, 581 F.2d 1111, 1113 (4th Cir. 1978), cert. denied, 440 U.S. 908 (1979)); McKnight v. Johnson Controls, Inc., 36 F.3d 1396, 1408 (8th Cir. 1994) ("If the ground for the objection becomes apparent while the witness is testifying, a subsequent motion to strike the testimony after the witness finishes does not preserve the issue for appeal"); Belmont Indus. v. Bethlehem Steel Corp., 512 F.2d 434, 437-38 (3d Cir. 1975) (holding that the opponent to certain evidence cannot wait to see if the proponent of such evidence will take steps to obviate the objection). The ground for objection here assertedly became apparent during cross-examination of Dr. Leonard when counsel for Mack Trucks questioned his assumptions regarding the dimensions of the deck plate previously used by Humphries. Mack Trucks did not object to the testimony until the conclusion of the Humphries' case. Thus, it clearly did not timely preserve the objection, and we review only for plain error under Fed. R. Evid. 103(d).

Dr. Leonard testified that Herman Humphries' previous use of a symmetrical deck plate may have caused "proactive interference" when Humphries performed the same task of connecting the air and electrical lines on the asymmetrical deck plate from which he fell. In other words, Humphries had developed behavioral habits that might have produced a "transference" problem when he went to make the connections on an asymmetrical deck plate. On cross-examination, defense counsel asked a series of questions intended to reveal that Dr. Leonard's opinion was based on his misunderstanding that the previous symmetrical deck plate extended beyond the frame rails of the truck. In response to these questions, Dr. Leonard modified his testimony and emphasized that as long as the previous deck plate was symmetrical, which it was, "proactive interference" could have an effect irrespective of the precise dimensions and actual placement of the deck plate. It was the province of the jury to evaluate Dr. Leonard's testimony, and, as instructed, they were free to disregard the testimony. See J.A. 571; Madden v. Cox, 284 S.C. 574, 328 S.E.2d at 114 (finding that the adequacy of an expert's knowledge went to the weight of the testimony, not its admissibility, and thus presented a

8

jury question). Certainly, there was no plain error in admitting this testimony.

C.

In sum, viewing the evidence in the light most favorable to the Humphries, the evidence, particularly the testimony of Dr. Alley and Dr. Tim Arthur Jur, as well as the testimony of Mack Trucks' expert witness, Russell Marhefka, was sufficient to support the jury's determination that Mack Trucks had breached its standard of care and had negligently designed the deck plate. See id. at 574, 328 S.E.2d at 112-13.**3** Therefore, the district court did not err in denying Mack Trucks' motion for judgment as a matter of law.

III.

Mack Trucks raises a number of issues in support of its contention that the district court abused its discretion in denying Mack Trucks' motion for a new trial.

A.

Although Mack Trucks concedes that the jury instructions as given were not legally inaccurate, it nevertheless contends that the district court erred in refusing to give a jury instruction that would have directed the jury's attention to the lapse of time and lack of other accidents to support a finding that the deck plate was not defective or unreasonably dangerous. "[T]he content of jury instructions in a diversity case is a matter of state law . . . ." Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1293 (4th Cir. 1995). In evaluating challenges to the district court's jury instructions, we "must look to the entire charge and affirm the trial court if the instructions, taken as a whole, fairly and adequately state the pertinent legal principles involved." Spartanburg County Sch. Dist. Seven v. National Gypsum Co., 805 F.2d 1148, 1150 (4th Cir. 1986). "Even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced

_____

**3** Because we conclude that there was sufficient evidence to support the jury's verdict as to negligent design, we need not reach the question of negligence as to the retrofit.

9

the [appellant]'s case." <u>Hardin</u>, 50 F.3d at 1296 (citing <u>Wellington v. Daniels</u>, 717 F.2d 932, 938 (4th Cir. 1983)).

As the district court appropriately emphasized, evidence related to the lapse of time and absence of prior accidents was admitted at trial and was therefore a factor for the jury to consider. Following the reasoning in <u>Hardin</u>, we agree with the district court that an instruction drawing the jury's attention to such evidence was not required. In <u>Hardin</u>, the plaintiff argued that the trial court erred by failing to include two proposed instructions addressing his theory of the case--instructions that specifically mentioned his contentions about the slope conditions--and that "the instructions as a whole were weighted in favor of the ski resort, containing extraneous material that could have confused the jury." <u>Hardin</u>, 50 F.3d at 1293. In affirming the jury verdict in favor of the defendant resort, we explained:

> Where . . . the instructions accurately covered all the issues in the case, the failure to reference specific aspects of a party's contentions, such as the direction of the snow gun or the wetness of the snow, cannot serve as a basis for a finding of error. . . . To the degree that the instructions reflected any lack of balance, that is due to the content of state law, not to the misstatement of relevant legal principles by the court.

<u>Id.</u> at 1295.

A review of the jury charges in the instant case indicates that they were adequately balanced and fair with regard to the Humphries' theories of the case and Mack Trucks' affirmative defenses. Any reference to specific proof served only to clarify what evidence did not by itself bar recovery or prove the existence of a defective design. For example, Mack Trucks complains that the district court downgraded its evidence with the instruction that "neither a long or continued lapse of time nor changes in ownership will defeat recovery where there is clear evidence of an original defect in the thing sold." However, the next line of the instruction states: "The mere fact that an injury occurred and the fact that a product could have been more safe is not sufficient to support a finding that the product was unreasonably dangerous." And four sentences later: "[P]roof that technology

10

existed which if implemented could have feasibly avoided a dangerous condition does not alone establish that the product was defective or unreasonably dangerous." Therefore, the district court did not abuse its discretion in denying the motion for a new trial for failure to include Mack Trucks' proposed jury instruction. **4**

B.

Mack Trucks also contends that the retrofit was a subsequent remedial measure, and as such, any evidence related to it was inadmissible under Fed. R. Evid. 407.**5** Taking a broader view of "remedial measures" than that urged by Mack Trucks, the district court admitted any evidence that preceded actual installation of the retrofit.

Mack Trucks relies on Kaczmarek v. Allied Chem. Corp., 836 F.2d 1055 (7th Cir. 1987), to argue that the evidence was inadmissible, but the holding in that very case supports the opposite conclusion. In Kaczmarek, the plaintiff suffered severe burns when acid leaked from an allegedly defective coupling on a hose. The decision to replace the couplings on hoses connecting the tank trailer to the receiving trailer had been made before the accident but not implemented until after the accident. The Seventh Circuit refused to carve out an exception under Rule 407 for the admissibility of subsequent remedial measures when the decision to adopt such measures was made prior to the accident. Id. at 1060. However, to clarify its holding, the court stated that "the decision itself will be admissible," id., but the actual fact of implementation will not, partly because of the incremental evidentiary impact of this fact (once the decision itself is put into evidence) and because of concerns related to the administration of Rule 407 once exceptions, even seemingly innocuous ones, are created. Id.

_____

**4** Mack Trucks also argues that the district court erred in refusing to charge the jury that a product cannot be defective and unreasonably dangerous if the danger is open and obvious. For the reasons set forth at the beginning of Part II above, we need not address the merits of this argument.

**5** Although, as previously mentioned, we need not address the Humphries' negligence claim as to the retrofit, we address this Rule 407 evidentiary issue because, at least arguably, the Humphries used the evidence of the retrofit to support their negligent design claim.

11

Applying the holding in Kaczmarek to the case at hand clearly indicates that any evidence related to Matlack's request for a retrofit, the design of the retrofit for trucks yet to be manufactured, the design of the retrofit kit for trucks previously delivered, and Matlack's order for the retrofit kits was admissible. See also Chase v. General Motors Corp., 856 F.2d 17, 22 (4th Cir. 1988); Traylor v. Husqvarna Motor, 988 F.2d 729, 733 (7th Cir. 1993); Arceneaux v. Texaco, Inc., 623 F.2d 924, 928 (5th Cir. 1980), cert. denied, 450 U.S. 928 (1981). Therefore, the district court did not abuse its discretion in admitting evidence related to the retrofit.

C.

Mack Trucks further contends that the district court erred in striking a defense based on S.C. Code Ann. § 42-1-580 (Law. Co-op. 1985),[6] which governs the effect of the rights of a third party against an employer on an employee's recovery. However, Mack Trucks fails to offer any convincing argument as to how this statutory provision entitles it to a set off from Mack Trucks for any worker's compensation benefits Herman Humphries may have received from American Transport Systems. Therefore, remanding the case for a new trial on this ground is not warranted.

D.

Finally, Mack Trucks argues that the jury award of nearly $1.9 million dollars in favor of Herman Humphries is excessive. A district court exercising diversity jurisdiction is obligated to apply state law rules for evaluating an allegedly excessive verdict. See Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996). "A new trial absolute should be granted only if the verdict is so grossly excessive that

_____

[6] Section 42-1-580 provides:

> When the facts are such at the time of the injury that a third person would have the right, upon payment of any recovery against him, to enforce contribution or indemnity from the employer, any recovery by the employee against the third person shall be reduced by the amount of such contribution of indemnity and the third persons's right to enforce such contribution against the employer shall thereupon be satisfied.

12

it shocks the conscience of the court and clearly indicates the amount of the verdict was the result of caprice, passion, prejudice, partiality, corruption, or other improper motive." Knoke v. South Carolina Dep't of Parks, Recreation, & Tourism, 324 S.C. 136, 478 S.E.2d 256, 258 (1996).

The record supports the district court's analysis of Herman Humphries' damages. He sustained severe physical injuries from his fall that have resulted in permanent disability. The amount of the award does not seem grossly excessive when one considers the medical bills, past and future loss of earnings, and the non-economic damages for the physical and mental pain and suffering caused by the injuries, the resulting disability, and the loss of enjoyment of life.

Mack Trucks argues that Steinke v. Beach Bungee, Inc., 105 F.3d 192 (4th Cir. 1997), required the district court to provide a detailed discussion of cases involving similar facts in order to identify the range of damage awards in comparable cases. According to Mack Trucks, because the district court failed to do so, we are unable to conduct a meaningful review. However, Mack Trucks' reading of Steinke is overbroad; the holding requires the trial court to provide its reasoning only if there is a departure from a range of damages identified by the court or if no comparable cases are found. There is simply no requirement that the district court provide an exposition of the relevant cases it considers. In the present case, the district court specifically noted that it had evaluated verdicts in comparable cases. Moreover, on appeal, Mack Trucks was free to cite analogous cases in which the damages awards were significantly less; tellingly, it cites none.

IV.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.

13