Clarence P. BAXTER, as Administrator of the estate of Catherine Baxter, also known as Kate Baxter, deceased, Appellant,

v.

J. C. AINSWORTH, Appellee.

Monette COPELAND, as Executrix of the estate of Armina Jordan, deceased, Appellant,

v.

J. C. AINSWORTH, doing business as Magnolia Butane Gas Company, Appellee.

Nos. 18536, 18537.

United States Court of Appeals
Fifth Circuit.

March 30, 1961.

Rehearing Denied May 11, 1961.

Grady W. Hurst, Jr., Chatom, Ala., for appellants.

W. B. Hand, A. F. Lankford, III, Mobile, Ala., Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, Ala., of counsel, for appellees.

Before TUTTLE, Chief Judge, and HUTCHESON, Circuit Judge, and CLAYTON, District Judge.

HUTCHESON, Circuit Judge.

These appeals are from judgments for the defendant in the United States District Court for the Southern District of Alabama (1) in the case of Clarence P. Baxter, as Administrator of the Estate of Catherine Baxter, also known as Kate Baxter, deceased v. J. C. Ainsworth, and (2) in the case of Monette Copeland, as Executrix of the Estate of Armina Jordan, deceased v. J. C. Ainsworth. The cases arising out of the same accident were consolidated for trial and the two appeals have been consolidated for hearing. The suits for the negligent death of the plaintiffs' intestates were brought under Section 123, Title 7 of the Code of Alabama, 1940.

The facts,[1] which came in without dispute, supported, if they did not demand, a jury verdict that Howard, the defendant's agent, was guilty of negligence in

1. These are: On July 18, 1958, the defendant was a liquefied petroleum gas dealer in the area of Chatom, Alabama, and was duly qualified as such dealer with the Alabama Liquefied Petroleum Gas Commission under Act 275 of the 1951 Legislature, codified as Section 179 (57) to 179(69) of Title 26, Code of Alabama, 1940. The defendant had in his employ on this date one Eugene Howard, Jr., also known as Junior Howard, whose principal duties were as a service man, but who also made deliveries of liquefied petroleum gas sold at retail.

Armina Jordan and Catherine Baxter were residents of Chatom and neighbors to each other. Sometime around noon Mrs. Jordan went to the office of the defendant in Chatom and ordered some gas. Howard went to her home to make this delivery about one o'clock P.M.

The home in which Mrs. Jordan lived was a common wood house with a tarpaper roof approximately 30 feet long by 16 or 18 feet wide. It faced east with the north axis lying approximately north and south. There was a front door approximately in the center of the east side of the house. On the north side of this

front door there were wooden shutter type windows approximately 3 x 5 feet that were propped up with a stick to allow ventilation. Inside the house and just north of the door was the butane stove. The gas tank, a 43 gallon bottle, was located adjacent to the east side of this building, north of the door and near the end of the corner of the house. It was situated so that its top was a few inches lower than the shutter type window it sat under, but the shutter to the window above it extended out over the tank.

Howard, the defendant's livery man, was familiar with this home and the gas installation there. When he first arrived on this occasion he went into the house and adjusted the pilot on the oven. He left the pilot light on the stove burning when he went back outside and he knew that Mrs. Jordan was cooking on the top of the stove. This stove was between 10 and 15 feet from where the butane tank was sitting, the shutter window above the tank was open and there was no obstruction between this window and the stove where the fire was burning. This tank had a slip tube type gauge which would

delivering the gas to the tank of the plaintiff.

Complaining of the court's charge to the jury as completely inadequate and wholly failing to correctly present to the jury the theory of plaintiffs' case, plaintiffs specifically assign error on the refusal of the court to give three charges requested by them.[2] They also complain of the giving by the court of charges requested by the defendant.

A careful reading of the court's general charge shows that, while it was of considerable length, it consisted largely of generalities which could apply to almost any case as well as to the case in which it was given, and in no part of the charge did the court present to the jury, as plaintiffs were entitled to have him do, plaintiffs' theory of their right to recover as the facts presented it. It was, therefore, clear error not to give the plaintiffs' requested charges or their substance since plaintiffs' point was clearly made and, in view of the general nature of the court's charge and the charges given at defendant's request, it was essential to plaintiffs' rights to have their theory presented, that the charges requested by them be given as requested or in substance.

In view of the plain error in the refusal to give plaintiffs' requested charges 2, 3, and 4, above set out, or some similar charge, it is unnecessary for us to consider whether the giving of the special charges, or any of them, requested by defendants, as complained of in plaintiffs' brief, constituted reversible error.

not register the amount of gas in the tank.

The tank had a valve on it which would shut off the supply of gas into the house, but Howard did not shut this valve off. This tank had a vapor return connection on it and the defendant had a vapor return line on his truck, but he did not connect this vapor return hose to the tank.

Howard connected the service line from the truck to the tank at the residence and began to pump gas into the tank, making frequent trips from the tank, where he would periodically check the slip tube attempting to determine the volume of gas in the tank, back to the truck to check on its meter for the number of gallons that had been pumped through it. The safety relief valve, also called the pressure relief valve, opened up, permitting the gas to escape for two or three seconds. Howard ran to the truck and cut the pump off. He went back to the tank and closed the valve off at the end of the delivery hose. He did not put out the fire in the stove, nor did he give any alarm to Mrs. Jordan or Mrs. Baxter that gas had escaped into the air. Since he had first arrived, Mrs. Baxter, who was a neighbor of Mrs. Jordan, had come over to Mrs. Jordan's house and was inside. When Howard reached to disconnect his hose nozzle from the filler valve on the tank, "the fire hit" coming from "out that window".

Both of these women came out of the house on fire and subsequently died as a result of burns received. Howard testified that the company had not held any course of instructions or safety courses teaching him about handling, storage and delivery of butane and propane gas, nor as to the standards required for tanks or the examination of tanks to determine the tanks to fill and the tanks not to fill.

The gas delivered on this occasion was "probably 60–40 butane and propane mixed" but Howard had not been instructed by the company as to what the properties of this gas were. Howard testified in answer to the question, "Were you conscious on this occasion of the fact that a draft or wind might draw the gas into the house if it escaped from the tank?", "Yes, I knew it was possible." He testified that the escape of gas from safety relief valves (pressure relief valve) "happened pretty regularly", that if it popped off he knew gas would escape and that if this gas reached a flame it was going to burn.

2. Plaintiffs' charges refused:

"(2) The court charges the jury that if the gas tank in this case was located in an unsafe place and if the defendants' employee undertook to fill such gas tank located in an unsafe place, then the defendants were guilty of negligence."

"(3) The court charges the jury that the duty is upon the Gas Company not to put gas in a gas tank located in an unsafe place, and if the Gas Company does so, it is guilty of negligence."

"(4) The court charges the jury that the defendant in this case is guilty of negligence if its employee undertook to put gas in the tank without ascertaining whether the conditions for the delivery were safe."

For the failure of the court to give in charge to the jury plaintiffs' charges 2, 3, and 4, or some similar instruction, the judgments must be, and they are Reversed and the causes are Remanded for trial anew and for further and not inconsistent proceedings.