Henry L. HARDIN, Plaintiff–Appellant,

v.

SKI VENTURE, INCORPORATED, d/b/a Snowshoe Resort, a West Virginia corporation, Defendant–Appellee.

No. 94–1674.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 1, 1995.

Decided April 6, 1995.

**ARGUED:** Debra Lynn Hamilton, Ditrapano & Jackson, Charleston, WV, for appellant. Robert Mason Steptoe, Jr., Steptoe & Johnson, Clarksburg, WV, for appellee. **ON BRIEF:** Rudolph L. Ditrapano, Ditrapano & Jackson, Charleston, WV, for appellant. John R. Merinar, Jr., Steptoe & Johnson, Clarksburg, WV, for appellee.

Before WIDENER and WILKINSON, Circuit Judges, and BUTZNER, Senior Circuit Judge.

Affirmed by published opinion. Judge WILKINSON wrote the majority opinion, in which Judge WIDENER joined. Senior Judge BUTZNER wrote a dissenting opinion.

## OPINION

WILKINSON, Circuit Judge:

In this diversity tort action, a jury found that the appellee, Ski Venture, Inc., was not guilty of negligence for the injuries that appellant Henry Hardin suffered in a skiing accident at the Snowshoe Ski Resort. Hardin now contests various rulings by the trial court. Specifically, he complains about the trial court's jury instructions, the partial disqualification of his expert witness, and the court's refusal to sanction the alleged failure of defendant to be more forthcoming in dis-

covery. Because we find no error in the trial proceedings, we affirm the judgment entered on the jury's verdict.

### I.

The skiing accident at issue in this case took place at the Snowshoe Ski Resort in West Virginia on February 24, 1990. Appellant was skiing an expert trail with his friends, Cindy Jacobs and Mark Degoursey. During his second run down the slope, Hardin skied through a plume of snow projected from a snowmaking machine. Hardin alleged that the artificial snow froze on his goggles, blinding him and causing him to lose control. He ran off the trail and struck a tree, where he sustained severe injuries that left him quadriplegic.

Hardin sued Ski Venture, Inc., the owner and operator of Snowshoe Resort. He alleged that the defendant had been negligent in the placement and operation of its snowmaking machines. Three specific bases of liability were pressed. First, Hardin argued that the snowmaking machines were pointed uphill, in violation of Snowshoe's own policy as well as industry safety standards. Second, Hardin maintained that the snow was too wet for safety on an open trail, again in violation of the resort's policy. Had the snow been drier, he argued, it would not have frozen on his goggles. Third, Hardin argued that the clear area past the snowmaking plume was not wide enough to allow "good skier flow." In support of his position, Hardin offered testimony from various witnesses to the accident, his own testimony, and an expert. The district court restricted the plaintiff's expert, Dr. Alan Caskey, from testifying about snowmaking or the conditions on the day in question, but did allow him to testify regarding the defendant's safety policy itself.

The defendant raised the affirmative defense of assumption of risk, arguing that the West Virginia Skiing Responsibility Act placed the burden of care on the plaintiff.*

Snowshoe offered evidence that Hardin had been skiing too fast, too close to the edge of the trail, and in a manner beyond his ability. Defendant also argued it had not been negligent in its operation of the snowmaking equipment. It noted that the snowgun was pointed uphill because snowguns must be pointed with the wind, and that only half the trail was covered by the plume, leaving more than adequate room to pass the snowmaking area. Defendant also offered eyewitness testimony that Hardin's skiing did not appear to be affected by the snowmaking operation. At the close of trial, the jury returned a verdict for the defendant, and the court entered judgment on that verdict. The jury did not reach the assumption of risk question, as it found that defendant had not been negligent in its maintenance of the ski trail. Plaintiff now appeals.

### II.

We first consider appellant's challenge to the district court's jury instructions. Hardin raises two distinct claims of error in this context. First, he argues that the trial court erred when it failed to include his two instructions on his specific theory of the case. These proposed instructions summarized his contentions about wet snow and the direction of the snow gun. Second, appellant claims that the instructions as a whole were weighted in favor of the ski resort, containing extraneous material that could have confused the jury. These instructions failed to fairly and adequately instruct the jury, Hardin argues, thereby prejudicing his case.

While the content of jury instructions in a diversity case is a matter of state law, the form of those instructions is governed by federal law. *See, e.g., Brown v. Petrolite Corp.,* 965 F.2d 38, 50 (5th. Cir. 1992); *Simmons, Inc. v. Pinkerton's Inc.,* 762 F.2d 591, 595 (7th Cir.1985). District courts are necessarily vested with a great deal of discretion in constructing the specific form and content of jury instructions. *Price*

---

* The West Virginia Skiing Responsibility Act provides that there are certain "inherent risks" in skiing that cannot serve as a basis for resort owner liability. These inherent risks are distinguished, however, from the duty of a ski area operator to maintain its ski slopes in a reasonably safe condition. If injury arises from a violation of this duty as opposed to an inherent risk, the owner may be held liable. W.Va.Code § 20–3A–1 et seq. (1989).

*v. Glosson Motor Lines, Inc.*, 509 F.2d 1033, 1036 (4th Cir.1975). By no means are they required to accept all the suggested instructions offered by the parties. *See, e.g., Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 556 (D.C.Cir.1993). So long as the charge is accurate on the law and does not confuse or mislead the jury, it is not erroneous. *Spell v. McDaniel*, 824 F.2d 1380, 1395 (4th Cir. 1987), *cert. denied sub. nom., City of Fayetteville v. Spell*, 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988). A set of legally accurate instructions that does not effectively direct a verdict for one side or the other is generally adequate. On review, jury instructions must also be viewed as a whole. *Thornhill v. Donnkenny, Inc.*, 823 F.2d 782, 787 (4th Cir. 1987). When the jury charge here is considered in its entirety, it is clear that the trial court provided an accurate overview of the pertinent legal principles and achieved an adequate degree of balance and fairness.

## A.

■ First, neither side was granted the specificity that plaintiff argues he was unfairly denied. Rather, the district court discussed each party's theory of the case in general terms. The court initially noted that Hardin's cause of action alleged that Snowshoe "negligently failed to maintain the Grabhammer trail in a reasonably safe condition." The court then proceeded to explain that defendant owed plaintiff "the duty of every person to exercise ordinary care in conduct toward others." It stated that in order to decide whether ordinary care was used, "the conduct in question must be viewed in the light of all surrounding circumstances." Moreover, the court explained that the West Virginia Skiing Responsibility Act imposed a statutory duty on the defendant to "[m]aintain the ski areas in reasonably safe condition." It further stated that defendant could be found negligent if it "failed to exercise ordinary care in the operation of its snow making equipment." It also reviewed the concepts of proximate cause and canvassed the rules of damages.

The instructions for the defendant were likewise general in tone and content. The trial court discussed the duties imposed on skiers by the Act, as well as those areas where the Act exempted ski resorts from liability, quoting directly from the statute as it did so. It also reviewed the defendant's affirmative defenses. First, it noted that defendant asserted contributory negligence, which the court defined in the same general terms as negligence. The court also stated that "the burden of proving that [defense] ... is upon the defendant." Second, the court defined the defense of assumption of risk and noted that defendant had to prove "[t]hat a hazardous condition existed at the time Mr. Hardin skied the Grabhammer trail ..., [t]hat Mr. Hardin had actual knowledge of the hazardous or dangerous condition, appreciated the risks involved, but proceeded to take some action" such as the failure "to ski within the limits of his ability [or] to maintain reasonable control of speed and course at all times while skiing." Nowhere did the court go into great detail about defendant's evidence or contentions, just as it did not discuss plaintiff's evidence or contentions in great depth.

■ That was not error. A court is not required to comment on specific evidence in the course of giving a jury instruction, and indeed often is well-advised not to. *Duke v. Uniroyal, Inc.*, 928 F.2d 1413, 1421 (4th Cir.) (noting that refusal to single out particular evidence is "often a sensible approach to evenhandedness in the presentation of the law."), *cert. denied*, 502 U.S. 963, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991). It is of course open to the trial judge to comment on such evidence in the course of an instruction, but it is also reasonable for a court to believe that such comments may carry unacceptable risks of removing from the jury its critical task of assigning weight to the evidence presented. *See Quercia v. United States*, 289 U.S. 466, 470, 53 S.Ct. 698, 699, 77 L.Ed. 1321 (1933) (stating that judges must be careful in instructions to limit comments on evidence so as not to sway or mislead jury); *see also* 9A Wright & Miller § 2557 (1995) (noting that courts are never required to comment on evidence). Similarly, courts must have the flexibility in instructions to avoid confusing or prejudicial statements that might arise from a discussion of the

specific contentions in a case. *See Adams v. Sewell,* 946 F.2d 757, 768 (11th Cir.1991) (finding no error in refusal to give more detailed proposed instruction on law when proposed instruction was "potentially confusing"). Different trial judges may have different preferences in this regard, and we decline to elevate any one preference to the status of circuit law. So long as the jury instructions are not merely statements of abstract principles of law with no relation to the facts, *United States v. Holley,* 502 F.2d 273, 276 (4th Cir.1974), the choice of generality versus specificity in the charge is a matter left to the sound discretion of the trial courts.

■ Moreover, it is accuracy, not specificity, that is the critical question with respect to jury instructions. *Spell,* 824 F.2d at 1395. Where, as here, the instructions accurately covered all the issues in the case, the failure to reference specific aspects of a party's contentions, such as the direction of the snow gun or the wetness of the snow, cannot serve as a basis for a finding of error. *See Quillen v. International Playtex, Inc.,* 789 F.2d 1041, 1045 (4th Cir.1986). This is not a case where the court failed to instruct the jury on an entire issue or claim presented by plaintiff's evidence. *Cf. Carvel Corp. v. Diversified Management Group, Inc.,* 930 F.2d 228, 230 (2d Cir.1991) (finding error in failure to instruct on issue of implied duty of good faith). The substance of plaintiff's theory of the case—that the defendant failed to maintain the trail in a reasonably safe condition— was adequately conveyed to the jury. The fact that plaintiff did not also receive more specific instructions in the exact form he requested is no basis for throwing out the jury's verdict.

**B.**

■ Second, the instructions here were not weighted impermissibly in favor of the defendant. In fact, the plaintiff received several individual instructions that were helpful to his side. For example, the court mentioned several times that plaintiff was alleging that defendant had failed to maintain the trail in a reasonably safe condition, and that this could be a basis for a finding of negligence. The court also carefully explained each element of the negligence cause of action, and dwelt at length on the concepts of damages.

Plaintiff complains about the "extra" information in the instructions relating to assumption of risk by skiers under the West Virginia Skiing Responsibility Act. He points to the court's mention of the fact that ski area operators are not liable for injuries resulting from

> [v]ariations in terrain; surface or subsurface snow or ice conditions; bare spots, rocks, trees, other forms of forest growth or debris; collisions with pole lines, lift towers or any component thereof; or, collisions with snowmaking equipment which is marked by a visible sign or other warning implement in compliance with [the requirements of the West Virginia Skiing Responsibility Act].

*See* W.Va.Code § 20–3A–3 (quoted in jury instructions). Because these factors were not directly at issue, Hardin argues that this discussion unbalanced the instructions and could only serve to confuse the jury.

It is clear, however, that a district court is allowed to cite a relevant statute in its instructions. *See Monahan v. Flannery,* 755 F.2d 678, 681 (8th Cir.1985). Indeed, it would be truly bizarre if it could not. To the degree that the instructions reflected any lack of balance, that is due to the content of state law, not to the misstatement of relevant legal principles by the court. Furthermore, the statutory reference was not extraneous. In fact, the Act was one of the central elements of state law in this case. The West Virginia statute indicates the extent of both the resort's duty and the limits of its liability with respect to skiing accidents. It reflects the relevant fact that the maintenance of a trail in a reasonably safe condition does not mean that every natural feature of the terrain must be removed. Likewise, the statutory list of the inherent risks of skiing could have been relevant to jury deliberations on whether plaintiff had in fact assumed the risk of his collision with the tree. At any rate, an objection by plaintiff to extraneous material on assumption of risk was largely moot because the jury never reached that issue, but

rather decided the threshold question that defendant had not been negligent.

■ Even when jury instructions are flawed, there can be no reversal unless the error seriously prejudiced the plaintiff's case. *Wellington v. Daniels,* 717 F.2d 932, 938 (4th Cir.1983). It is not the function of an appellate court to nit-pick jury instructions to death. Here, there may well have been some surplusage in the instructions, but nothing that rose to a level of error, let alone prejudicial error. The instructions, taken as a whole, were accurate and balanced. They were neither too scant on details nor too expansive on irrelevancies. At the end of the day, the fact is that this case went to a fair and impartial jury, and the jury simply found in favor of the defendant. An appellate court should respect that result.

### III.

■ We next address Hardin's assertion that the district court improperly limited the testimony of his expert witness. When Dr. Caskey was sworn in, the court carefully reviewed his qualifications as an expert. It canvassed his educational background, skills, association memberships, publications, and prior work experience. Ultimately, the trial court limited Dr. Caskey to testimony about recreational safety policies, which bore the most direct relationship to his education and background in recreation. He was not allowed to discuss snowmaking. Appellant argues that this ruling was "confusing." He further contends that the restriction was in error, and that this error severely impeded the effectiveness of his case.

Again, appellant's contentions overlook the wide range of discretion accorded to trial courts in these matters. *Sparks v. Gilley Trucking Co., Inc.,* 992 F.2d 50, 53 (4th Cir.1993). The trial court's order allowed Dr. Caskey to discuss Snowshoe's safety policies themselves, but not whether or how those policies were applied by the defendant. This limitation was obviously designed to prevent the expert from offering any opinions about the snowmaking on the day in question—an area in which he clearly had no knowledge. The source of the "confusion" was in part due to plaintiff's attempt to

stretch the expert's testimony beyond its set boundaries.

■ Moreover, the limits placed on Dr. Caskey's testimony were not an abuse of the court's discretion. The touchstone of whether a witness may testify as an expert under Fed.R.Evid. 702 is, as appellant notes, whether he would be "helpful," but it is helpfulness to the *trier of fact,* not to a party's case, that counts. The sum total of Dr. Caskey's experience in snowmaking was some design work on a small sledding hill in Indiana. Testifying as an expert in other ski accident cases did not, contrary to plaintiff's assertion, qualify him as an expert on this subject. *Thomas J. Kline, Inc. v. Lorillard, Inc.,* 878 F.2d 791, 800 (4th Cir.1989), *cert. denied,* 493 U.S. 1073, 110 S.Ct. 1120, 107 L.Ed.2d 1027 (1990). Indeed, it appears that the plaintiff was fortunate to have as much latitude with his expert as he did. Accordingly, we reject appellant's argument that the limitations were improper or an abuse of discretion.

### IV.

■ Finally, we reject Hardin's claim that the trial court erred by refusing to sanction the defendant for failing to disclose the existence of a second snowgun during the discovery process. The trial court found no bad faith on the part of the defendant, and we see no reason to second-guess its judgment. Moreover, the parties and witnesses agreed that the accident involved only a single snowgun. The snow from the second gun fell far below and off to a different side of the trail from the area of the accident. Further, plaintiff had a full opportunity at trial to bring out the facts about the second gun and argue the issue to the jury. In sum, there was no possibility that the failure to disclose the second gun prejudiced plaintiff's case in any way.

### V.

For the foregoing reasons, the judgment in this case is

*AFFIRMED.*

BUTZNER, Senior Circuit Judge, dissenting:

I respectfully dissent because the district court's refusal to instruct the jury on Hardin's theory of recovery was prejudicial error.

Hardin proved Snowshoe's snowmaking policies, which read in part: "When making snow on trails that are open, the following steps should be taken. 1. Make snow dry and skiable.... 3. Point gun, if possible, the same direction as skiers are skiing.... 5. Select snowmaking areas that are wide enough to allow good skier flow." There is no suggestion that Snowshoe's snowmaking policies did not conform to industry standards.

Both Hardin and Mrs. Cindy Jacob testified that the snow coming from the machine was wet and froze on their goggles. Hardin testified that the snow gun was pointed uphill. There is no claim that it was impossible to point the gun downhill. Mrs. Jacob testified that the snowmaking plume obscured the trail on which they were skiing.

The relevant portion of Hardin's instruction, which the court refused, was as follows:

Specifically, the plaintiff claims that the defendant [Snowshoe], was negligent in the following ways:

1. The defendant did not follow its own snowmaking policies.

2. The defendant was making wet snow.

3. The snowmaking equipment was pointed uphill, rather than in the direction the skiers, including the plaintiff, were skiing.

4. The snowmaking area was too narrow to avoid; that is, it was not wide enough to allow good skier flow.

The court instructed the jury generally on the law of negligence. The court instructed that the defendant had a duty to maintain the ski area in a reasonably safe condition. It defined negligence as a failure to exercise ordinary care.

Snowshoe does not assert that Hardin's instruction was incorrect. It argues that the district court's instructions on negligence were accurate, fair, and complete. Snowshoe's argument is just plain wrong.

Three cases, from among many of similar import, illustrate the district court's error. A court must instruct the jury on the law with due regard to the specific facts of the case at hand. See Merchants National Bank of Mobile v. United States, 878 F.2d 1382, 1388 (11th Cir.1989). A failure to give proffered instructions is error when the proposed instructions are accurate and the instructions actually given to the jury fail to explain the law adequately or tend to confuse or mislead the jury. See Sullivan v. National Football League, 34 F.3d 1091, 1106–07 (1st Cir.1994).

In Baxter v. Ainsworth, 288 F.2d 557 (5th Cir.1961), the trial court instructed the jury on negligence in general terms but refused to instruct regarding specific acts by the defendant that could support a finding of negligence. The appellate court found the trial court's general instruction on negligence insufficient because "in no part of the charge did the court present to the jury, as plaintiffs were entitled to have him do, plaintiffs' theory of their right to recover as the facts presented it." 288 F.2d at 559.

By refusing to give Hardin's proffered instruction, the district court departed from a well-established principle of law governing the trial of cases in federal courts. While a court is not required to comment on the evidence, it must recognize that a litigant "is entitled to have its legal theories on controlling issues, which are supported by the law and the evidence, presented to the jury." Sullivan, 34 F.3d at 1107. There can be no doubt that Hardin suffered prejudice, for it was on the basis of faulty instructions that the jury found Snowshoe was not negligent.