**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PATRICIA COHEN, as Administrator of
the Estate of Mae Bell Cohen,
deceased; PURNELL COHEN,
<u>Plaintiffs-Appellants,</u>

v.

WINNEBAGO INDUSTRIES,
INCORPORATED,
<u>Defendant-Appellee,</u>

                                 No. 98-1925

and

GENERAL MOTORS CORPORATION;
A & S FIBERGLASS, INCORPORATED,
<u>Defendants,</u>

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,
<u>Movant.</u>

PATRICIA COHEN, as Administrator of
the Estate of Mae Bell Cohen,
deceased; PURNELL COHEN,
<u>Plaintiffs-Appellees,</u>

v.

                                 No. 98-2536

WINNEBAGO INDUSTRIES,
INCORPORATED,
<u>Defendant-Appellant,</u>

and

GENERAL MOTORS CORPORATION;
A & S FIBERGLASS, INCORPORATED,
<u>Defendants,</u>

NEW JERSEY MANUFACTURERS
INSURANCE COMPANY,
<u>Movant.</u>

Appeals from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-96-3312-4-22)

Argued: January 28, 2000

Decided: March 23, 2000

Before NIEMEYER, Circuit Judge, HAMILTON,
Senior Circuit Judge,
and Frederic N. SMALKIN, United States District Judge
for the District of Maryland, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** James R. Hubbard, RICCI, HUBBARD, LEOPOLD,
FRANKEL & FARMER, West Palm Beach, Florida, for Appellants.
Ronald Eugene Boston, TURNER, PADGET, GRAHAM & LANEY,
P.A., Columbia, South Carolina, for Appellee. **ON BRIEF:** F. Patrick
Hubbard, School of Law, UNIVERSITY OF SOUTH CAROLINA,
Columbia, South Carolina; John S. DeBerry, Florence, South Caro-
lina, for Appellants. Elbert S. Dorn, TURNER, PADGET, GRAHAM
& LANEY, P.A., Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal follows a jury verdict for the appellee, Winnebago, in the second trial of a products liability case.[1] The appellants allege that the trial judge committed reversible error in her charge to the jury. We have considered the briefs and arguments of counsel and find no reversible error in Judge Currie's instructions to the jury. Accordingly, the judgment will be affirmed.

I.

This lawsuit stems from a fatal highway accident occurring on November 19, 1994, near Dillon, South Carolina. On that night, Purnell and Mae Bell Cohen were passengers in Kernell [2] and Jacqueline Cohen's Winnebago "conversion van," driving northbound on I-95 to their home in New Jersey. Also in the van were the younger Cohens' three minor children. The accident occurred late at night (approximately 11:30 P.M.). Jacqueline Cohen was driving, while the other passengers were asleep -- Kernell in the front passenger seat, and Mae Bell and Purnell in back seats. It is undisputed that neither Purnell nor Mae Bell was wearing a seatbelt.

There was evidence to suggest that Jacqueline fell asleep at the wheel. In any event, the van veered off the road, crossed it again, rolled two and a quarter times, and smashed into a tree. At the time

_____

[1] Winnebago appeals the denial of its Rule 50 motion for judgment as a matter of law following the first trial, which ended in a mistrial. Because we affirm the jury's verdict in favor of Winnebago at the second trial, Winnebago's appeal is dismissed as moot. Accordingly, the appellants' motion to dismiss Winnebago's appeal for lack of appellate jurisdiction is denied as moot.

[2] Kernell Cohen is the son of Purnell and Mae Bell Cohen.

3

of the accident, evidence suggested the van had been traveling 75 MPH in a 65 MPH zone. Mae Bell Cohen was killed and Purnell Cohen was severely injured as a result of the accident. The other occupants of the vehicle, remarkably, were not injured.[3]

At some point during the accident, the fiberglass roof of the conversion van was stripped off. Mae Bell was ejected from the van, but there was conflicting evidence on whether she exited through the roof or through some other opening, like a door or window, and whether her fatal injuries were sustained as a result of the ejection or if they occurred during the van's rolling motion. Moreover, it is not clear whether Purnell was ejected from the van at all, or if his son pulled him out of it after the accident.

The appellants' theory of liability keys in on the factual premise of injury to the Cohen parents as a consequence of their ejection through the roof opening of the vehicle. Appellants claim that a through-the-roof ejection was made possible only because Winnebago's product was defective in terms of its roof construction.

Following the accident, Purnell Cohen, on his own behalf, and Patricia Cohen, acting as Mae Bell's Estate Administrator, brought suit against Winnebago, the van's converter, and G.M., the van's manufacturer. The first trial ended in a mistrial due to a hung jury. G.M. was thereafter dismissed as a defendant, and the Cohens went on to a second trial, against Winnebago alone. They claimed that the conversion van was defective due to the fact that Winnebago had taken off the welded steel roof which was on the van when G.M. delivered it for conversion, and replaced it with a fiberglass roof attached only with sheet metal screws. The appellants also alleged a failure to warn of the dangers associated with modifying the roof. The second trial resulted in a jury verdict for the remaining defendant, from which the appellants now appeal. Specifically, in answering a special verdict sheet, the jury found that Winnebago was not negligent in replacing the roof and that the conversion van was not defective.

_____

[3] Jacqueline and Kernell were both wearing seatbelts at the time of the accident. It is not clear whether the children were also wearing seatbelts, but in any event they were not seriously injured.

4

II.

Appellants contend that the trial judge made four reversible errors in instructing the jury: 1) the trial court incorrectly charged the jury that the "conversion van industry" was the relevant industry for determining such issues as custom, state of the art and the existence of an alternative reasonable design; 2) it incorrectly defined "state of the art" as the "design customs and trade practices" of the industry; 3) it instructed, in contradiction of South Carolina law, that the plaintiff must present evidence of an alternative reasonable design practicable under the circumstances; and 4) it failed to instruct that the warning given must be "adequate."

An appellate court reviews a claim that jury instructions incorrectly state the substantive law de novo. See Trimed, Inc. v. Sherwood Medical Co., 977 F.2d 885, 888 (4th Cir. 1992). Otherwise, jury instruction issues are reviewed for abuse of discretion. See Chaudhry v. Gallerizzo, 174 F.3d 394, 408 (4th Cir. 1999); Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1293 (4th Cir. 1995). "So long as the charge is accurate on the law and does not confuse or mislead the jury, it is not erroneous." Hardin, 50 F.3d at 1294; see also Chaudhry, 174 F.3d at 408. An appellate court should not "nit-pick jury instructions to death." Hardin, 50 F.3d at 1296. Instead,"jury instructions must ... be viewed as a whole." Id. at 1294. Even if there was an error in a given instruction, "there can be no reversal unless the error seriously prejudiced the plaintiff's case." Id. at 1296.

With these standards in mind, we turn to the specific assignments of error made by the appellants.

III.

Appellants' trial theory was that Winnebago had produced an unreasonably dangerous product, because it tore out part of the welded steel roof that came on the van as built by G.M. and replaced it with a fiberglass roof attached only with sheet metal screws. In addition, appellants alleged, the defendant failed to warn consumers and users of the van that it was dangerous. Appellants now contend that the trial court incorrectly charged the jury on the law and, by its instructions, directed a verdict as to a disputed question of fact, errors

5

which, they contend, effectively forced the jury to find for the defendant.

A.

Appellants' principal allegation of error is that the trial judge incorrectly instructed the jury that the relevant industry to be analyzed in addressing industry customs, "state of the art," and alternative design issues was the "conversion van industry." Appellants contend that there was a disputed question of fact on whether van converters form an industry of their own or should be considered part of the broader automotive industry for product liability purposes. The basis for the appellants' contention that the trial court improperly directed the jury to focus on the conversion van industry alone is a statement the judge made in charging the jury on the "consumer expectation test" for unreasonably dangerous products, viz:

> In addition, evidence of the state of the art - that is, evidence of the design customs and trade practices - of the conversion van industry at the time of manufacture and sale and evidence of such industry standards, if any, is relevant to whether the product is dangerous beyond the expectations of an ordinary consumer.

Jt. App. at 869. The appellants argue that, by instructing the jury that the relevant industry was the conversion van industry, the trial court directed a verdict on what they contend was a disputed question of fact.

We do not agree with the appellants' contentions. First, the quoted snippet is the only occasion in forty-two pages of jury instructions in which the trial court implied the jury should consider the "conversion van industry" as relevant for ascertainment of industry standards. When instructing the jury on the issues of strict liability and negligence, the district judge used the generic terms "industry" and "manufacturer" pervasively, almost exclusively. There is no basis to assume that the jury would interpret this isolated reference to the "conversion van industry" as an explicit direction to consider only that subset of vehicles when it was required to compare Winnebago's performance to industry norms. The consistent use of generic terms left the jury

6

free to evaluate this issue on its own. In short, even if there were some error in the trial judge's reference to the conversion van industry, "construed as a whole, [the instructions here] adequately state[d] the controlling legal principle without misleading or confusing the jury." Chaudhry v. Gallerizzo, 174 F.3d 394, 408 (4th Cir. 1999) (citation omitted).

Furthermore, upon our review of the evidence introduced at trial, we are of the opinion that the trial judge could have appropriately instructed the jury explicitly that it should consider the "conversion van industry" as a distinct market or industry group to which Winnebago belongs. The undisputed evidence showed that GM delivered the shell of the van to Winnebago for conversion in accordance with a detailed agreement between the two companies. All of the major automobile manufacturers have similar arrangements with Winnebago and other van converters. At the time of the trial, there were approximately one million such conversion vans in use in the United States. They serve a very specific purpose compared to other automobiles, or even other full size vans, in that they are more like mini "motor homes" or "recreational vehicles" than stock vans. They can be equipped with "captain's chairs," bench seats that turn into beds, carpeting, and TVs and VCRs. As part of their intended use to facilitate comfortable travel and camping, conversion vans often have raised fiberglass roofs, as the Cohens' van did. Given the unique characteristics and uses of these vans, and the number of them on the roads, it is appropriate that they should be considered to form their own unique industry group and not be compared to the broader automobile market. See Mears v. General Motors Corp., 896 F.Supp. 548, 552 (E.D.Va. 1995) (compare vehicle at issue to others which have the same uses, not the broad automotive market) (citing Dreisonstok v. Volkswagenwerk, A.G., 489 F.2d 1066, 1075 (4th Cir. 1974)). It would not be a far stretch from appellants' argument to say that, for product liability purposes, a motorcycle should be grouped with a dump truck. This Court will not so say.

B.

The appellants' next contention is that the trial court, in the instruction quoted above, improperly defined "state of the art" to mean "de-

7

sign customs and trade practices."[4] Appellants argue that under South Carolina law these are two distinct issues: "state of the art" means that which is "scientifically and technologically feasible," while the term "design customs" refers to what industry standards are. See Brief of Appellant at 43. This distinction is important, appellants argue, because an entire industry may be negligent by not utilizing techniques which are feasible. Appellants contend this instruction was prejudicial because it, in effect, instructed the jury that if Winnebago conformed to the industry custom of installing a fiberglass roof with sheet metal screws, it was acting in accordance with both the state of the art and industry norms, which would constitute a defense to the negligence claim.

The Court agrees that this instruction, read in isolation, could engender some confusion as to the distinction between industry customs and the state of the art. Whatever error there might have been, however, was inconsequential, as the trial court gave this instruction explicitly in the context of the consumer expectation test. As such, the instruction was an accurate statement of South Carolina law. See Bragg v. Hi-Ranger, Inc., 462 S.E.2d 321, 328 (S.C. App. 1995) ("The state of the art and industry standards are relevant to show both the reasonableness of the design and that the product is dangerous beyond the expectations of the ordinary consumer.") (citation omitted).

Moreover, the court later clearly instructed the jury on the importance of the distinction between compliance with industry norms and ascertaining what is technologically feasible:

> Evidence of compliance with custom and practice in an industry may be considered as evidence of due care. However, such compliance is not conclusive on this issue. An entire industry may be negligent, as there are precautions so imperative that even their universal disregard will not excuse their omission.

_____

[4] Specifically, the court began the instruction on the consumer expectation test: "In addition, evidence of the state of the art -- that is, evidence of the design customs and trade practices. . . ." Jt. App. at 869.

8

Jt. App. at 871-872 (emphasis added). This instruction captures succinctly the distinction that appellants argue is so important -- that just because a manufacturer complies with industry norms does not mean it is acting with the appropriate standard of care if the entire industry is not utilizing scientifically feasible, safer methods of which the industry should be aware. Accordingly, taking the instructions as a whole, this Court concludes that they accurately reflected South Carolina law and did not mislead or confuse the jury on this issue. See Bragg, 462 S.E.2d at 330 ("If, as a whole, the [jury] charges are reasonably free from error, isolated portions which might be misleading do not constitute reversible error.").

C.

The next allegation of error is that the trial court incorrectly charged the jury that the appellants bore the burden of proving by a preponderance of the evidence that there existed an"alternative safer design practicable under the circumstances . . . ." Jt. App. at 877. Appellants contend that this is not a required element of their claims. The argument lacks merit, because providing evidence of the existence of an alternative safer, feasible design is part of the plaintiff's products liability case under South Carolina law, and hence the instruction was appropriate. See Bragg, 462 S.E.2d at 327 (affirming the trial court's directed verdict on a strict liability claim because the appellants failed to introduce any evidence of a"feasible design alternative"), and at 330 (reiterating that the plaintiff had failed to introduce such evidence and noting that the alternative design must be feasible; appellants cannot "rely upon mere conceptual design theories") (citation omitted); see also Sunvillas Homeowners Assoc., Inc. v. Square D Comp., 391 S.E.2d 868, 870 (S.C. App. 1990) (in affirming trial courts' directed verdict for defendant on product liability negligence claim, court noted and relied on the fact that plaintiff's expert failed to offer any evidence of an alternative design).

Appellants argue that Bragg does not make evidence of design alternatives an additional element of the appellants' case; instead, they argue, Bragg merely stands for the proposition that such evidence must be offered in order for the case to go to the jury. The appellants' argument fails because they do not explain how it is possible that failure to introduce evidence on a certain issue dooms a case as a matter

9

of law, but how an instruction that such evidence is required is erroneous. The clear import of Bragg is that, under South Carolina law, evidence of an alternative design is required; accordingly it is appropriate for the trial judge so to instruct the jury. **5**

Even if this portion of the charge had been an incorrect statement of South Carolina law, appellants have not demonstrated how they were prejudiced by the instruction. See Hardin v. Ski Venture, Inc., 50 F.3d 1291, 1296 (4th Cir. 1995). As they readily admit in their brief, appellants presented ample evidence on alternative design options at trial through their expert's testimony on the possibilities of retaining the original steel roof or replacing it with another metal roof. See Brief of Appellant at 49. They are unable now to argue convincingly that charging the jury that such evidence was required was seriously prejudicial to the outcome of their case, when they in fact presented "sufficient evidence" on the issue. Id.

D.

Appellants' final contention is that, when charging the jury on the "failure to warn" claim, in one instance the trial court did not explicitly instruct that the warning had to be "adequate." This argument is

_____

**5** Both sides cite the recent case of Allen v. Long Mfg. NC, Inc., 505 S.E.2d 354 (S.C. App. 1998), but reach opposite conclusions as to its relevance to the question of whether a plaintiff is required to produce evidence of an alternative feasible design. In that case, the trial court had granted summary judgment for the defendant, in part because the plaintiff had failed to present any evidence of an alternative feasible design. See id. at 359. The South Carolina Court of Appeals reversed the trial court because, it held, the defendant had not provided an adequate warning. See id. at 358. In doing so, it stated, "[w]e need not address whether a feasible design alternative must be presented to survive summary judgment." Id. at 359. Appellants interpret this sentence to mean that the issue is still unsettled in South Carolina. Winnebago attempts to show that the opinion actually "validates" the Bragg holding, but concedes that the actual meaning of the sentence is just what it says -- that the court need not reach the issue because the point is moot. Allen simply does not say one way or the other explicitly whether proof of an alternative feasible design is required. What is clear, however, is that it does not overrule Bragg's holding that such proof is required.

10

without merit for two reasons. First, in the course of the instructions the court repeatedly used the terms "adequate" or "sufficient" to describe the type of warning which must be given. See Jt. App. at 866-872. Second, even if the trial court had never used the term "adequate," there is no indication that such omission would have made a substantive difference in the meaning of the instructions. The whole gist of the instruction was that it was for the jury to determine whether or not the warnings were adequate under the circumstances. Given that, there was no need to modify the word"warning" with the word "adequate" at every mention.

IV.

In conclusion, the Court has carefully considered each of the appellants' contentions and finds them to be without merit. As this Court stated in Hardin, "[a]t the end of the day, the fact is that this case went to a fair and impartial jury, and the jury simply found in favor of the defendant. An appellate court should respect that result," 50 F.3d at 1296, without nit-picking the instructions. Accordingly, the judgment in this case is

AFFIRMED.

11