**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

JERRY ANTONIO WILLIAMS,
*Defendant-Appellant.*

No. 98-4926

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

HILTON THOMAS, a/k/a Dinkles,
*Defendant-Appellant.*

No. 99-4129

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

v.

TIMOTHY EDWARD SIMMS, a/k/a
DeNasty,
*Defendant-Appellant.*

No. 99-4867

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-97-355-WMN)

Argued: May 9, 2001

Decided: July 31, 2001

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** Fred Warren Bennett, Greenbelt, Maryland; Michael Daniel Montemarano, Baltimore, Maryland, for Appellants. Robert Reeves Harding, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas J. Saunders, Baltimore, Maryland, for Appellant Thomas. Stephen M. Schenning, United States Attorney, Baltimore, Maryland, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Jerry Antonio Williams, Hilton Thomas, and Timothy Edward Simms (collectively, "Appellants") were convicted of various charges stemming from their involvement in the murder of John Jones. For the reasons set forth below, we affirm Appellants' convictions and Thomas' sentence; however, we vacate Simms' sentence and remand for resentencing.[1]

---

[1]Williams does not challenge his sentence.

## I.

Because our discussion below requires us to consider only legal issues, the facts may be briefly stated. Beginning in the late 1980s, Anthony Jones operated an increasingly large and violent drug distribution ring ("the Jones organization") in east Baltimore, Maryland. As a means of protecting the organization and fostering a reputation as one to be feared and respected, Jones engaged in or ordered numerous acts of violence and intimidation against others. Williams, as one of Jones' chief lieutenants, was directly or indirectly involved in many of these acts.

The trial in this case primarily concerned the murder of John Jones ("John"), Jones' adopted brother. In February 1997, Jones learned that John was cooperating with a federal investigation of the Jones organization. Jones, who at that time was incarcerated in a federal penitentiary in Pennsylvania, instructed Williams to arrange for John's murder. The Government presented evidence that the murder was ultimately carried out by Thomas and Simms.

Based upon the evidence presented at trial, Williams and Thomas were convicted of murder in aid of racketeering, *see* 18 U.S.C.A. § 1959(a)(1) (West 2000); Thomas and Simms were convicted of conspiracy to distribute heroin and cocaine, *see* 21 U.S.C.A. § 846 (West 1999); and Thomas was convicted of conspiracy to murder in aid of racketeering, *see* 18 U.S.C.A. § 1959(a)(5) (West 2000), and conspiracy to retaliate against witnesses, *see* 18 U.S.C.A. § 1513(a)(1) (West 2000).[2] Appellants raise numerous challenges to their convictions; Thomas and Simms additionally argue that their sentences on the drug trafficking counts are improper under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Although we have carefully considered all of Appellants' claims, only Williams' challenge to the jury instructions and

---

[2]Although Simms was charged with conspiracy to murder in aid of racketeering, murder in aid of racketeering, and conspiracy to retaliate against witnesses, the jury acquitted him of those charges. Williams, who had previously been convicted of other crimes in connection with his involvement in the Jones organization, was charged only with murder in aid of racketeering.

Thomas' and Simms' *Apprendi* challenges merit extended discussion. The remaining claims are rejected without further comment.

## II.

We first consider Williams' challenge to the jury instruction given by the district court regarding criminal liability for aiding and abetting. That instruction was as follows:

> Under the aiding and abetting statute, it's not necessary for the government to show that a defendant himself physically committed the crime with which he is charged in order for you to find the person guilty. The person who aids or abets another to commit an offense is just as guilty of that offense as if he committed it himself.

> Accordingly, you may find a defendant guilty of the offense charged if you find beyond a reasonable doubt that the government has proved that another person actually committed the offense with which the defendant is charged, and that the defendant aided or abetted that person in the commission of the offense.

> . . . .

> And in order to aid or abet another to commit a crime, it's necessary that the defendant willfully and knowingly participate or associate himself in some way with the crime, and that he willfully and knowingly seek by some act to help make the crime succeed.

> Participation in a crime is willful if action is taken voluntarily or intentionally, or in case of a failure to act, with a specific intent to [fail] to do something that the law requires to be done; that is to say, with a bad purpose either to disobey or disregard the law.

> The mere presence of a defendant, where a crime is being committed, even coupled with knowledge by the defendant that a crime is being committed, or the mere acquiescence by a defendant in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting.

An aider and abettor must have some interest in the criminal venture, and his participation in, or association with the crime, must occur before or at the time of the criminal act.

To determine whether a defendant aided or abetted the commission of a crime with which he's charged, you could ask yourself these questions:

Did he participate in the crime charged as something that he wished to bring about?

Did he associate himself with the criminal venture knowingly and willfully?

Did he seek by his actions to make the criminal venture succeed?

And, if he did, then [the] defendant is an aider and [abettor] and, therefore, guilty of the offense.

*If, on the other hand, your answers to the series of questions are no, then the defendant is not an aider and abettor, and you must find him not guilty.*

J.A. 457-60 (emphasis added). Williams acknowledges that the district court gave the standard pattern jury instruction for criminal liability as an aider and abettor. Nevertheless, he contends that the emphasized portion of the instruction is erroneous because it allowed the jury to acquit only if it answered "no" to *all* of the questions posed by the district court, when an acquittal would have been required upon a negative answer to any *one* of the questions. Williams claims that this flaw in the instruction allowed the jury to convict him based on a finding of mere association with John's murder, instead of upon a finding that he rendered some assistance prior to, or contemporaneously with, the commission of the crime.

We review the content of jury instructions for abuse of discretion, and we must affirm if "the instructions, taken as a whole, adequately state the controlling law." *United States v. Hassouneh*, 199 F.3d 175, 181 (4th Cir. 2000) (internal quotation marks omitted). In conducting this review, we must bear in mind that "[i]t is not the function of an appellate court to nit-pick jury instructions to death." *Hardin v. Ski Venture, Inc.*, 50 F.3d 1291, 1296 (4th Cir. 1995).

Williams' challenge to the instruction given by the district court focuses exclusively on the last sentence. Were such a myopic view proper in reviewing a challenged jury instruction, Williams' argument would have at least some superficial appeal. However, we must view the instructions as a whole, and doing so compels the conclusion that instruction adequately informed the jury that it could not convict Williams unless it found that he actively participated in John's murder. We therefore reject this challenge.

### III.

We next turn to Thomas' and Simms' challenges to their sentences. Thomas and Simms both maintain that the district court erred in failing to treat drug quantity as an element of the drug trafficking offense.

Because neither Appellant raised this issue before the district court, our review is for plain error. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993). In order to demonstrate plain error, Appellants must show that an error occurred, that the error was plain, and that the error affected their substantial rights. *See id.* at 732; *United States v. Jackson*, 124 F.3d 607, 614 (4th Cir. 1997). Even if Appellants can satisfy these requirements, correction of the error remains within our discretion, which we should not exercise unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings. *See Olano*, 507 U.S. at 732.

In light of our recent en banc opinion in *United States v. Promise*, ___ F.3d ___ (4th Cir. June 29, 2001) (en banc), we conclude that Thomas and Simms have demonstrated that an error occurred and that the error was plain. Here, as in *Promise*, Thomas and Simms were charged in an indictment that did not allege a specific threshold drug quantity, and the jury was not instructed regarding drug quantity. Accordingly, Thomas' and Simms' convictions on the drug trafficking count exposed them to a maximum statutory penalty of 20 years, and the sentences imposed by the district court on those convictions —life imprisonment for Thomas and 40 years imprisonment for Simms—were plainly erroneous. *See Promise*, ___ F.3d at ___.

We further conclude that Simms has demonstrated that the error affected his substantial rights. Simms was convicted only of a single count of drug trafficking. Because his sentence of 40 years exceeded —indeed, was twice as long as—the maximum penalty to which his conviction exposed him, his substantial rights were affected by the sentencing error of the district court. *See id.* at ___. And, in light of the Government's concession at oral argument that the evidence regarding threshold drug quantity was neither overwhelming nor uncontroverted, *cf. id.* at ___ (opinion of Wilkins, J.) (declining to notice *Apprendi* error in part because evidence of threshold drug quantity was overwhelming and uncontroverted), we exercise our discretion to notice the error. We therefore vacate Simms' sentence and remand for resentencing.[3]

---

[3]In calculating Simms' sentence under the *United States Sentencing Guidelines Manual* (1998), the district court applied a cross-reference to the murder guideline based on Simms' involvement in John's murder. *See* U.S.S.G. § 2D1.1(d)(1). Simms now maintains that the district court violated *Apprendi* by applying the cross-reference based upon acquitted conduct. We disagree; nothing in *Apprendi* contradicts the settled holding of the Supreme Court that district courts may consider acquitted conduct in applying the guidelines when that conduct has been proven by a preponderance of the evidence. *See United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam); *cf. United States v. Kinter*, 235 F.3d 192, 199-202 (4th Cir. 2000) (concluding that the procedures mandated by the sentencing guidelines do not violate the rule set forth in *Apprendi*), *cert. denied*, 121 S. Ct. 1393 (2001). Moreover, the district court did not commit clear error in applying the cross-reference to the murder guideline based on the evidence concerning Simms' participation in the murder.

In light of our conclusion that the district court appropriately applied the cross-reference to the murder guideline, we do not address Simms' argument that his criminal history score should not include a prior conviction which, he asserts, was uncounseled. The murder guideline, U.S.S.G. § 2A1.1, sets a base offense level of 43, resulting in a presumptive life sentence for all criminal history categories. *See id.* Ch.5, Pt.A (Sentencing Table). Accordingly, even if the district court erred in including the challenged conviction in Simms' criminal history score, Simms' guideline sentence would be the same. And, the guidelines provide that when the guideline sentence (here, life imprisonment) exceeds the statutory maximum penalty (here, 20 years), "the statutorily authorized maximum sentence shall be the guideline sentence." *Id.* § 5G1.1(a).

In contrast to Simms, Thomas cannot demonstrate that the error of the district court affected his substantial rights. In addition to his drug trafficking conviction, Thomas was convicted of, and received a life sentence for, murdering John in aid of racketeering. In view of the imposition of a life sentence on another conviction, the life sentence erroneously imposed for Thomas' drug trafficking conviction did not affect his substantial rights.

IV.

In sum, we affirm Appellants' convictions and Thomas' sentence.[4] However, we vacate Simms' sentence and remand for resentencing.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*

---

[4]We hereby grant Williams' motion for leave to present an additional claim based on our recent holding in *United States v. Boone*, 245 F.3d 352, 358-61 (4th Cir. 2001), that 18 U.S.C.A. § 3005 (West 2000) entitles a defendant indicted for a crime potentially punishable by death to representation by two attorneys regardless of whether the Government actually seeks the death penalty. Since murder in aid of racketeering is such a crime (indeed, the Government initially sought the death penalty against Williams, but later withdrew its notice of intent to seek the death penalty), Williams contends that he is entitled to a new trial because he was represented by only one attorney at trial. *See Boone*, 245 F.3d at 364.

Because Williams did not raise this claim in the district court, we review for plain error. *See Olano*, 507 U.S. at 731-32. Even if we were to assume that there was error, that the error was plain, and that the error affected Williams' substantial rights, we would decline to exercise our discretion to notice the error. Simply put, the error here—the failure to provide a *non-capital* defendant the benefit of a provision designed to provide additional protection to *capital* defendants—did not affect the fairness, integrity, or public reputation of judicial proceedings.